PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
12/08/99
THOMAS K. KAHN
CLERK

---------------------------------------

No. 98-8986

---------------------------------------

D. C. Docket No. CR498-43


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANGELO EUGENE WILLIAMS,

Defendant-Appellant.


-------------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Georgia
-------------------------------------------------------------------
**(December 8, 1999)**


Before EDMONDSON and BIRCH, Circuit Judges, and OWENS*, Senior District Judge.

_____

*Honorable Wilbur D. Owens, Jr., Senior U.S. District Judge for the Middle District of Georgia, sitting by designation.


EDMONDSON, Circuit Judge:

Defendant Angelo Eugene Williams, under 18 U.S.C. § 2244(a)(1), was convicted of abusive sexual contact in the territorial jurisdiction of the United States. We vacate the conviction and sentence and remand.

BACKGROUND

This case arises from an incident at the Hunter Army Airfield Youth Center ("Youth Center") in October 1997. At that time, Defendant was employed as a computer specialist at the Youth Center, a recreational facility for children living on the base. Defendant's duties included maintaining the Youth Center computer room and supervising children's use of the computers.

According to the Government's evidence at trial, Defendant engaged in abusive sexual contact with K.T., a ten year-old female, in the Youth Center computer room on October 14, 1997. The Government's evidence established that K.T. arrived at the Youth Center and that she went to the computer room. In the computer room, K.T., with Defendant's permission, seated herself at Defendant's computer terminal.

K.T. testified that, while sitting at Defendant's terminal, Defendant touched her leg and chest and asked her for a kiss. An Army investigator testified that K.T. told him that Defendant touched her chest, buttocks, and vaginal area. The Government

2

also introduced a statement in which Defendant admitted that he rubbed the inside of K.T.'s leg, that he hugged her, that he touched her chest and buttocks, and that he asked her to kiss him.

At trial, Defendant testified that K.T. had indeed come to the computer room and that he had permitted her to use his computer. He testified, however, that after K.T. had used his computer for some time, he asked her to get up because he needed to use the computer. He stated that, as he instructed K.T. to leave his terminal, he rolled toward her in a roll-away chair, hitting her leg with his hand. K.T., according to Defendant, then moved away from the terminal, but later returned and attempted to use Defendant's computer again. Defendant said that he, at that point, grabbed K.T.'s shoulder and instructed her to leave his computer alone. Defendant testified that K.T. used another computer for some time and then left the computer room. Defendant admitted giving an incriminating statement to investigators, but he denied the statement was true, explaining that he caved in to the investigator's promise that he could "put this thing behind [him]" if he made a statement.

Defendant requested at trial that the district court give a lesser included offense jury instruction on simple assault (18 U.S.C. § 113(a)(5)). The court refused to give the instruction, explaining that "[t]he evidence does not fit." Defendant was then convicted of violating § 2244.

DISCUSSION

Defendant asserts five grounds for his appeal.[1] We find it necessary to address two of Defendant's contentions here. First, we address Defendant's claim that the Speedy Trial Act was violated in his case and, concluding that this claim has merit, vacate the conviction. Second, because the Government may seek to retry Defendant for this offense, we also address Defendant's claim that the district court erred in refusing to give an instruction on assault as a lesser included offense of abusive sexual contact.

1.    THE SPEEDY TRIAL ACT

Defendant contends that the district court erred by denying his motion to dismiss the indictment under the Speedy Trial Act, 18 U.S.C. § 3161 et seq.[2] In particular, Defendant argues that the district court, in finding that the seventy-day

---

[1] Defendant claims that the district court erred by refusing to: (1) dismiss the indictment under the Speedy Trial Act; (2) charge the jury on assault as a lesser included offense; (3) appoint an expert to testify on whether Defendant fit the profile of a child molester; (4) admit favorable evidence of a Georgia Department of Family and Children's Services (DFACS) report regarding Defendant; and (5) allow Defendant to ask K.T.'s sister whether she would believe K.T. under oath with regard to the crime charged.

[2] The remedy for violation of the Speedy Trial Act's seventy-day limitation period is dismissal of the indictment. 18 U.S.C. §3162(a)(2).

limitation had not been violated in Defendant's case, improperly excluded from its Speedy Trial Act calculation twenty days allowed for the filing of pretrial motions. We agree that these days were improperly excluded.[3]

The Speedy Trial Act provides that a defendant must be brought to trial within seventy days of the filing of his indictment, or his first appearance before a judicial officer, whichever is later. United States v. Davenport, 935 F.2d 1223, 1227 (11th Cir. 1991). Certain periods, however, are excluded from the seventy-day limit. United States v. Schlei, 122 F.3d 944, 985 (11th Cir. 1997). "Any period of delay resulting from other proceedings concerning the defendant" must be excluded from the seventy-day calculation. 18 U.S.C. § 3161(h)(1).

In this case, the Magistrate Judge voluntarily ordered that all pretrial motions be filed no later than twenty days after the Defendant's arraignment.[4] The district court excluded this twenty-day period from its Speedy Trial Act calculations. The Government urges that this exclusion was proper under § 3161(h)(1) and our decision in United States v. Mejia, 82 F.3d 1032 (11th Cir. 1996). We disagree.

---

[3] We review the district court's construction and interpretation of the Speedy Trial Act de novo. We review the district court's factual determinations on excludable time for clear error. United States v. Schlei, 122 F.3d 944, 984 (11th Cir. 1997).

[4] Defendant took full advantage of the twenty-day deadline, filing several discovery motions on the twentieth day. This fact, however, has no bearing upon our analysis. See United States v. Mejia, 82 F.3d 1032, 1036 (11th Cir. 1996) ("Whether motions are actually filed during the extension is unimportant.").

In Mejia, we decided that, where a defendant moved for, and the court granted, an extension of time for filing additional pretrial motions, the district court properly excluded the extension period from Speedy Trial Act calculations. Id. at 1035-36. We reasoned that such an extension falls within § 3161(h)(1)'s language about "[a]ny period of delay resulting from other proceedings concerning the defendant." Id. It does not follow from Mejia, however, that the twenty-day period in the instant case is excludable.[5]

Instead, we think that Mejia presented a case different from the present case. In Mejia, the defendant sought and obtained an *extension* of time in which to file his motions. Id. at 1035. Implicit in the term "extension" is the notion that the defendant sought additional time not normally permitted for the filing of motions. In other words, he sought to *delay* the forward progression of the proceedings. That an extension of time in which to file motions will work a delay in bringing the defendant to trial seems likely.

Here, on the other hand, there was no *extension* of time; twenty days after arraignment was the original deadline set by the court for filing pretrial motions.

---

[5] The court in Mejia expressly declined to comment on a case more like the instant one, where the district court sua sponte sets a deadline for the filing of pretrial motions. See Mejia, 82 F.3d at 1036 n.3 ("[W]e decide nothing today about whether extensions for the preparation and filing of pretrial motions granted by the court upon motion of the government or by the court sua sponte result in excludable days under § 3161(h)(1)").

Moreover, twenty days after arraignment is, by local rule, the ordinary time allowed for the filing of motions in the Southern District of Georgia. See S.D. Ga. Local Criminal Rule 12.1. Therefore, even if the Magistrate by order had entered no deadline in this case, the parties would have had twenty days after the arraignment to prepare and to file their pretrial motions. In our view, such a routine time prescription is no "delay" in bringing the defendant to trial. To qualify as an excluded period under § 3161(h)(1), the period must constitute a "delay." 18 U.S.C. § 3161(h)(1).

Moreover, the twenty-day period in this case was hardly extraordinary or specifically-tailored to the needs of this case. It was not the result of a motion to enlarge the time to file motions. Instead, it was "based merely upon the entry of a standard scheduling order." See United States v. Hoslett, 998 F.2d 648, 656 (9th Cir. 1993). An exclusion based on a case-specific determination that additional time is needed for the disposition of pretrial motions is one matter; an across-the board exclusion of twenty days in every case arising in a judicial district is quite another. See id. Therefore, Mejia does not control the outcome of this case.

Because our duty is to carry out the intent of Congress, we must look to the language of the statute itself. As noted previously, § 3161(h)(1) requires a "delay" as a prerequisite to exclusion. On this record, we see no indication that the judge's

setting of a deadline for the filing of motions worked a "delay" within the meaning of the statute.

We also look to the structure of the statute as a whole. The Speedy Trial Act makes allowance for the delay occasioned by the exigencies of particular cases. The automatic exclusions of § 3161(h)(1)(A)-(J) take account of the delay that may result from an array of particular pretrial circumstances. In addition, § 3161(h)(8)(A) excludes delay resulting from a continuance where the court specifically finds that the interests of justice furthered by the continuance outweigh the interests of the public and the defendant in a speedy trial. But, none of the exclusion provisions of the Act specifically address the situation in this case; and, they do not indicate, in our view, an intention on the part of Congress to allow for broad, across-the-board exclusions created by a district court's standard scheduling practices or local rule.[6] See generally 18 U.S.C. § 3161(h)(8)(C) (providing that no continuance "because of general congestion of the court's calendar" is excludable).

---

[6] If the customary time allowances for the filing of motions resulted in excludable time, each judicial district, in effect, would be free to amend the Speedy Trial Act by local rule. For example, considering its local rule, it appears that in the Southern District of Georgia the seventy-day limit always (or almost always) would be transformed into a ninety-day limit. We are unable to believe that Congress intended that result.

8

The twenty days allowed for the filing of pretrial motions were not properly excludable in this case.[7] Therefore, more than seventy -- at least eighty-one -- non-excludable days elapsed between the Defendant's first appearance and the commencement of his trial. The trial court thus erred in denying Defendant's motion to dismiss the indictment under the Speedy Trial Act.

## 2. LESSER INCLUDED OFFENSE

Defendant also asserts, on appeal, that the district court erred in declining to instruct the jury on assault as a lesser included offense of abusive sexual contact. We agree. And, because the Government may re-indict and retry Defendant for abusive sexual contact, and because the pertinent evidence in a new trial may be like the evidence in this trial, we address the issue.

---

[7] We follow the Sixth and Ninth Circuits. See United States v. Moran, 998 F.2d 1368, 1370-71 (6th Cir. 1993); United States v. Hoslett, 998 F.2d 648, 656 (9th Cir. 1993). We recognize that the Seventh Circuit has said that a sua sponte scheduling order, however routine, setting a deadline for filing motions results in excludable time. United States v. Montoya, 827 F.2d 143, 153 (7th Cir. 1987). The Seventh Circuit's decision in Montoya is grounded in the premise that "[i]f the defendant believes no time or less time is needed he can so advise the court and the case may proceed without regard to possible pretrial motions." Id. We disagree, for we believe that "the burden should not be on the defendant to take affirmative steps to keep the speedy-trial clock running." Moran, 998 F.2d at 1371. The duty to comply with the Speedy Trial Act lies with the courts, not with defense counsel.

By the way, the Government does not contend, nor does the record suggest, that defense counsel in this case should have known, when the twenty-day deadline was announced, that a violation of the seventy-day limit would necessarily occur.

9

To establish that the district court erred in refusing to give the lesser included offense instruction, Defendant must satisfy a two-part test.  First, he must show that the charged offense encompasses all of the elements of the lesser offense ( the "elements" test).  Schmuck v. United States, 489 U.S. 705, 716, 109 S. Ct. 1443, 1450 (1989).  Second, he must establish that the district court abused its discretion in failing to give the instruction.  An abuse of discretion may occur where the evidence would permit the jury rationally to acquit the defendant of the greater, charged offense and convict him of the lesser.  United States v. Cornillie, 92 F.3d 1108, 1109 (11th Cir. 1996).  Applying this two-part test, we believe that the district court erred in this case when it refused to instruct the jury on assault as a lesser included offense.

First, abusive sexual contact with a child, under 18 U.S.C. § 2244(a)(1), encompasses all of the elements of simple assault under 18 U.S.C. § 113(a)(5).  The elements of abusive sexual contact with a child under § 2244(a)(1) are: (1) in the special maritime and territorial jurisdiction of the United States, (2) the defendant intentionally (3) touched the genitalia, anus, groin, breast, inner thigh, or buttocks (4) of a child less than twelve years of age (5) "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  18 U.S.C. § 2244(a)(1); 18 U.S.C. § 2246(3).

10

A person commits assault under § 113 when, (1) in the special maritime and territorial jurisdiction of the United States, (2) he "assaults" another person. 18 U.S.C. § 113(a). Section 113 does not define "assault", so we give that term its meaning at common law. United States v. Guilbert, 692 F.2d 1340, 1343 (11th Cir. 1982). At common law, an assault was either a battery, an attempted battery, or an act that puts another in reasonable apprehension of receiving immediate bodily harm. See id. Given the arguments of the parties in this case, we focus on assault committed by a battery.

The Government contends that abusive sexual contact with a child does not encompass all of the elements of common law battery; the Government says that battery requires an intent to do bodily harm. We disagree. In his *Commentaries*, Blackstone observed:

> The least touching of another's person wilfully, or in anger, is a battery; for the law cannot draw the line between different degrees of violence, and therefore totally prohibits the first and lowest stage of it: every man's person being sacred, and no other having a right to meddle with it, in any the slightest manner.

United States v. Stewart, 568 F.2d 501, 505 (6th Cir. 1978) (quoting 3 Blackstone, Commentaries on the Law of England 120 (E. Christian ed., 1822)). Case law is in accord with Blackstone: the intention to do bodily harm is not a necessary element of battery. State v. Duckett, 510 A.2d 253, 257 (Md. 1986). The slightest willful

11

offensive touching of another constitutes a battery at common law, regardless of whether the defendant harbors an intent to do physical harm. See Gates v. State, 138 S.E.2d 473, 473-74 (Ga. Ct. App. 1964) (affirming battery conviction on evidence that defendant intentionally "tapped" woman on buttocks in public store); Wood v. Commonwealth, 140 S.E. 114, 116 (Va. 1927) (affirming conviction for assault and battery where defendant fondled fourteen year-old girl).

Furthermore, the view that common law battery (and, thus, § 113(a)(5) assault) does not contain an intent to harm element is borne out by § 113 itself. Section 113 identifies seven kinds of assault. See 18 U.S.C. § 113(a). For some of these offenses, the statute specifically sets forth a specific intent requirement. See 18 U.S.C. § 113(a)(1) (assault with intent to commit murder); 18 U.S.C. § 113(a)(3) (assault with a dangerous weapon and intent to do bodily harm). The subsections identifying assault by striking, beating or wounding, assault resulting in serious bodily injury, and simple assault (the subsection at issue in this case), however, contain no language setting out a specific intent requirement. The courts have recognized this omission, concluding that no specific intent element exists for assault by striking, beating, or wounding, United States v. Martin, 536 F.2d 535, 535-36 (2d Cir. 1976), and assault resulting in serious bodily injury. United States v. Juvenile Male, 930 F.2d 727, 728-29 (9th Cir. 1991).

Our view of assault is also consistent with authorities recognizing that sex offenses frequently encompass simple assault as a lesser included offense. See United States v. Eades, 633 F.2d 1075, 1077 (4th Cir. 1980) ("[T]he great majority of the offenses proscribed by Maryland's sexual offense statutes may be said to encompass simple assault as a lesser included offense."); see also Sills v. State, 135 S.E. 758, 758 (Ga. Ct. App. 1926) ("An assault or assault and battery is necessarily involved in every case of rape."). Thus, we conclude that simple assault under § 113(a)(5) is a lesser included offense of abusive sexual contact under § 2244(a)(1).

Next, we must decide whether an evidentiary basis exists for a rational jury to have found Defendant guilty of simple assault but not guilty of abusive sexual contact.[8] We believe such a basis does exist. Defendant testified that he hit the victim, K.T., on the leg with his hand. Defendant further testified that he grabbed K.T.'s shoulders. Defendant testified that K.T. responded to being struck on the leg by stating: "Oh, Mr. Williams, you didn't have to push me. Mr. Angelo, you didn't have to push me." We conclude that such testimony, if accepted by a jury, could give a rational factfinder a sufficient basis upon which to find that Defendant did touch K.T., and that the touching was offensive and not consented to by her, but that the

---

[8] Excerpts from Defendant's testimony at trial are reprinted in the Appendix to this opinion to show more fully the evidentiary basis for a jury instruction on assault.

13

touching was not of a sexual nature. Thus, the jury could decide that Defendant committed simple assault, rather than abusive sexual contact. 18 U.S.C. § 113(a)(5); 18 U.S.C. § 2244(a)(1).

## CONCLUSION

Because we conclude that the district court erred in denying Defendant's motion to dismiss the indictment for violation of the Speedy Trial Act, we VACATE the conviction and sentence and REMAND to the district court with directions to dismiss the indictment without prejudice.[9]

VACATED AND REMANDED.

## APPENDIX

### SELECTED TESTIMONY OF DEFENDANT

Q:    What happened, if anything . . . as far as [K.T.]? Do you
       remember anything about the 14th?

A:    Yes, she was on, she was on my system playing the games. And
       Ms. McMillan, the director, had come and told me about a
       roster, because we were planning some trips. She had sent it to
       Fort Stewart, but she didn't type it. I had to type it for her.

---

[9] The preexisting case law of this Circuit was not certain on whether or not the twenty days in this case would be excludable. The charged offense is a serious one. The delay in going to trial was not great. Therefore, the indictment should be dismissed without prejudice. See 18 U.S.C. § 3162(a)(2).

So, I asked [K.T.] to get up. Now, I don't allow anybody to sit in my chair. It is like one of those big roll away chairs. And as I sit in my chair, I rolled towards [K.T.]. And with the back of my hand, I hit the chair and part of her leg. And the chair flew away, just, you know, because it had, it had rollers on it.

Okay. So, I mean, my chair had rollers on it. So, when I rolled over there, I hit her chair. And that chair moved some distance, because they are regularly like homeroom chairs, you know, that they use. Right?

So, the chair slid and her reaction, you know how kids are, "Oh, Mr. Williams, you didn't have to push me. Mr. Angelo, you didn't have to push me." I said, "No, I didn't push you. You just need to put meat on your bones." That's all, which I tease all the kids all the time, you know, in various ways, the different ways.

So, I got down at the system and started typing. And I had a phone call.

Q: Who?

A: Yes, as a matter of fact, I had a phone call from the director asking me about the roster. So, as I was walking away, I saw [K.T.] getting ready to sit back down to finish her game. And that's when I turned and said, "No, honey, you can't mess with it now, because I have opened up some of my admin stuff, and I don't want you to mess with any of it."

(R2:144-46).

Q: Okay. When you said you touched her, when you grabbed her, where did you grab her?

A: On her shoulders.

(R2:146).

15

Q: Did you in fact touch [K.T.] in a sexual manner?

A: No, sir, I didn't.

Q: Did you touch her on her breast?

A: No, sir, I didn't.

Q: Did you touch her on the vaginal area, on the crotch?

A: No, sir, I didn't.

Q: Did you touch her on her inner thigh?

A: No, sir, I didn't.

Q: Okay. Did you touch her on the buttocks?

A: No, sir, I didn't.

Q: Did you have any bent to touch her in a sexual manner?

A: No, I didn't. No, I didn't.

(R2:153-54).