[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 23, 2007
THOMAS K. KAHN
CLERK

Nos. 06-13093 & 06-13842
Non-Argument Calendar

_____

D. C. Docket Nos.
99-00100-CR-CB-001
99-00148-CR-CB-002-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRED LAMBERT,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Alabama

_____

**(February 23, 2007)**

Before WILSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Fred Lambert appeals his 27-month sentence for violation of supervised

release, arguing that his sentence is unreasonable because the district court's finding that he possessed marijuana was unreasonable and unsupported by the record and because the district court did not indicate that it was taking the 18 U.S.C. § 3553(a) factors into consideration when imposing the sentence. For the reasons set forth more fully below, we affirm.

We review for abuse of discretion the district court's conclusion that the defendant violated the terms of his supervised release. United States v. Copeland, 20 F.3d 412, 413 (11th Cir. 1994). We are bound by the district court's findings of fact unless they are clearly erroneous. United States v. Almand, 992 F.2d 316, 318 (11th Cir. 1993). We review the sentence imposed upon revocation of supervised release for reasonableness. United States v. Sweeting, 437 F.3d 1105, 1106-07 (11th Cir. 2006).

The probation officer alleged that Lambert violated multiple conditions of his supervised release, including the mandatory condition that he not commit another federal, state, or local crime.[1] This violation was based on an arrest on a

---

[1] In addition, the probation officer alleged that Lambert violated the following conditions of his supervised release: (1) no illegal possession of a controlled substance (mandatory condition); (2) participation in a program of treatment and testing for drug and/or alcohol abuse (special condition); (3) not frequenting places where controlled substances are illegally sold, used, distributed, or administered (standard condition 8); and (4) not associating with any persons engaged in criminal activity and not associating, without permission, with any person convicted of a felony (standard condition 9). In its written judgment, the district court found that Lambert admitted to violating these conditions.

charge of first degree possession of marijuana, in violation of Ala. Code § 13A-12-213. The evidence presented at the revocation hearing revealed that a Crown Royal bag containing two bags of marijuana and empty plastic bags, which Officer Walkener Hudson, the arresting officer, testified was consistent with packaging for street sale, was found in an Escalade, which smelled of marijuana and which belonged to Lambert and his fiancee.[2] When the police arrived, Lambert's fiancee was sitting in the front passenger seat of the vehicle, Lambert was standing outside the vehicle near his fiancee, and Marquet Reese was either sitting in the back seat or standing between the rear passenger door and the back seat. The marijuana was subsequently found in the back seat, in the same area where Reese had been. All three were subsequently arrested for possession of marijuana. Although Officer Hudson admitted that he told Lambert and his fiancee that he believed that the marijuana belonged to Reese, nevertheless he had to arrest all three of them because Reese would not admit it. He also testified that state criminal charges had been brought against Lambert.

Reese told Officer Hudson and his probation officer that the marijuana was already there when he got inside the vehicle. However, both at the time of the incident and at the revocation hearing, Lambert and his fiancee maintained that the marijuana belonged to Reese. Lambert, his fiancee, his fiancee's daughter, and an

---

[2] In portions of the testimony, she is also referred to as Lambert's wife.

employee at his fiancee's shop all testified that they saw Reese with the bag. Lambert's fiancee also testified that, after their arrests, Reese told her and Lambert that, when he went to court, he would say that the marijuana belonged to him.

Lambert and Reese's probation officer also testified that Reese told him that the car in which Reese and a second person were riding ran out of gas. They saw Lambert pass by and Reese called Lambert on a cell phone for assistance. Lambert picked them up and took them to a gas station near Lambert's wife's shop. At Lambert's insistence, they went to Lambert's wife's shop to get his other car. Lambert asked Reese to go into the shop and ask Lambert's wife for the keys. Lambert's wife went to remove supplies from the car, and she and Lambert began arguing about Lambert getting a car. They were still arguing when Reese got into the back seat and, within two minutes, the officers arrived.

Lambert's fiancee also testified that, when Reese and Lambert arrived, Reese exited a Cadillac, entered the shop, and asked for the keys to the truck. She told Reese to wait, because she needed to get work things and her car charger out of the vehicle. She was getting the car charger out of the truck when the police arrived. She also admitted that she told an officer that she smoked marijuana in the vehicle earlier that morning. She explained that she got the marijuana at a gas station from a girl, who she thought was called "Baby Girl," and that three or four people smoked it together about 10:00 a.m. standing outside the vehicle. She

4

thought that the marijuana odor could have been from this.

Her daughter also testified that Reese was holding a little Ziploc bag of marijuana. Her mother came outside to speak to Lambert, but did not go inside the Escalade. However, she saw Lambert get out of the driver's side of the Escalade. On cross-examination, she testified that she saw Reese with a cloth bag, she never saw a plastic bag, and she figured out that there was marijuana in the bag based on what the police officers said.

Lambert testified that he was sitting in front of his grandmother's house, Reese passed by, and Reese subsequently called him for a ride to the gas station because he ran out of gas. The first place they went to had gas pumps, but did not sell gas. They got gas at the station across the street from his fiancee's shop and then stopped to see her. Lambert stated that he saw Reese with the bag, but did not pay any attention to the bag. He further explained, "I really didn't even see it. I saw it, but I didn't see it." Asked about this testimony on cross-examination, Lambert explained that Reese jumped out of the car so fast and Lambert was "like: 'What the – what you got to – what you interested to go see my old lady for?'"

Lambert further testified that they arrived at the shop and Reese went inside. Lambert went into the shop, Reese and his fiancee were already walking toward him, and they went out to the truck. Lambert's fiancee gave him the key, Reese sat down in the back seat, and Lambert's fiancee got in the front seat, took some stuff

5

to the other car, and came back to the truck. Lambert denied having possession of the Crown Royal bag or knowing that marijuana was in the bag.

After finding Lambert's fiancee's explanation of the marijuana odor not credible, the district court found that the Escalade was being used that day for the utilization, or possibly the sale, of marijuana. The district court stated that it did not believe Lambert's testimony, explaining that Lambert was not a believable witness, and his explanation was "totally improbable[,]" "bounced all over the place[,]" and was not what someone who was completely innocent would provide about how the marijuana got there and what they knew about it. The court further found that Lambert was driving around with those people that day, there was marijuana in the car, Lambert knew about the marijuana, and that he violated his supervised release.

A district court may "revoke a term of supervised release . . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release . . . ." 18 U.S.C. § 3583(e)(3). The court's findings regarding Lambert's knowledge of the marijuana and the ultimate finding of a violation of the terms of Lambert's supervised release due to possession of marijuana in violation of state law rest on the district court's rejection of Lambert's testimony. However, "[t]he credibility of a witness is in the province of the factfinder and this court will not ordinarily review the factfinder's determination of credibility."

6

Copeland, 20 F.3d at 413. Moreover, it was also within the court's province as the factfinder to infer that the opposite of disbelieved testimony was true. See United States v. Mejia, 82 F.3d 1032, 1038 (11th Cir. 1996) ("A proper inference the jury can make from disbelieved testimony is that the opposite of the testimony is true."). As a result, we hold that the district court did not clearly err in finding that Lambert had knowledge of the marijuana, despite Lambert's denial of such knowledge. We further hold that the court's conclusion that Lambert violated the terms of his supervised release was not an abuse of discretion.

Upon finding that a defendant violated a condition of supervised release, the district court may revoke the term of supervised release and impose a term of imprisonment after considering most of the factors set out in 18 U.S.C. § 3553(a). See 18 U.S.C. § 3583(e); Sweeting, 437 F.3d at 1107. Revocation of supervised release is mandatory if the defendant:

> (1) possesses a controlled substance in violation of the condition set forth in subsection (d);
> (2) possesses a firearm, as such term is defined in section 921 of this title, in violation of Federal law, or otherwise violates a condition of supervised release prohibiting the defendant from possessing a firearm;
> (3) refuses to comply with drug testing imposed as a condition of supervised release; or
> (4) as a part of drug testing, tests positive for illegal controlled substances more than 3 times over the course of 1 year . . . .

§ 3583(g). "'If supervised release is subsequently revoked under 18 U.S.C. § 3583(e), the statute also requires that the § 3553(a) factors be considered.

7

However, when revocation of supervised release is mandatory under 18 U.S.C. § 3583(g), the statute does not <u>require</u> consideration of the § 3553(a) factors.'" <u>United States v. Brown</u>, 224 F.3d 1237, 1241 (11th Cir. 2000) (quoting <u>United States v. Giddings</u>, 37 F.3d 1091, 1095 (5th Cir. 1994)) (emphasis in original).

Although the district court never stated whether it was revoking Lambert's supervised release under § 3583(e)(3) or under § 3583(g), the revocation petition alleged that Lambert violated a mandatory condition of his supervised release, which prohibited the illegal possession of a controlled substance, based on Lambert's admitted usage of his cocaine, which he obtained at his cousin's house. In its written judgment, the district court found that this mandatory condition was violated. As a result, although the district court did not specify the authority by which it was revoking Lambert's supervised release, clearly it was acting pursuant to § 3583(g)(1). Therefore, the district court was not required to consider the § 3553(a) factors when revoking Lambert's supervised release. <u>Brown</u>, 224 F.3d at 1241.

Even if the district court was proceeding under § 3583(e)(3), no error occurred. Even when the court must consider the § 3553(a) factors, it is not required "to state on the record that it has explicitly considered each of the § 3553(a) factors . . . ." <u>United States v. Scott</u>, 426 F.3d 1324, 1329 (11th Cir. 2005). Here, the district court failed to expressly state that it took the § 3553(a)

factors into consideration. However, the district court calculated Lambert's Guideline imprisonment range and gave the parties an opportunity to comment. After hearing from Lambert personally, the court stated that Lambert had the benefit of a sentence reduction from 105 months' to 52 months' due to his cooperation. It further stated that, looking at Lambert's entire file, and seeing what happened in his past, what happened when Lambert was previously before the court, and what happened while he was on supervised release, a combined sentence of 27 months' imprisonment as to both counts, to run concurrently was appropriate. The court also ordered Lambert to undergo evaluation for drug abuse treatment and to attend the 500-hour program if appropriate. The record, therefore, reflects the court's consideration of the Guidelines, see 18 U.S.C. § 3553(a)(4)(B), the nature and circumstances of the prior offenses and present violations and Lambert's history, see id. § 3553(a)(1), and his possible need for drug treatment, see id. § 3553(a)(2)(D). Under these circumstances, the court's failure to explicitly reference § 3553(a) was not erroneous. Accordingly, it does not preclude our review of the substantive reasonableness of Lambert's sentence, which we conclude was reasonable.

In light of the foregoing, Lambert's sentence is

**AFFIRMED.**

9