[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 04, 2010
JOHN LEY
ACTING CLERK

No. 09-11427
Non-Argument Calendar

_____

D. C. Docket No. 08-80103-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SEDRICK LAWSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 4, 2010)

Before EDMONDSON, BIRCH and FAY, Circuit Judges.

PER CURIAM:

Sedrick Lawson appeals from the district court's denial of his motion to continue his trial or, in the alternative, to exclude a government witness's testimony, as well from the district court's denial of his motion for a new trial. On appeal, Lawson argues that the government violated *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), his due process rights, and the district court's pre-trial standing discovery order by failing to disclose impeachment information regarding a government witness until two business days before trial. Lawson contends that he was prejudiced by this tardy disclosure because, had the government timely provided him with this information, he would have been able to conduct an investigation yielding additional details about the witness's criminal background and past work as a confidential informant ("CI"). In addition, Lawson contends that the district court abused its discretion by failing to adequately consider whether the government's conduct warranted the exclusion of witness testimony or a continuance of his trial. For the reasons set forth below, we affirm.

## I.

In August 2008, a federal grand jury charged that, on November 9, 2007, Lawson and a codefendant, Terry Johnson, distributed crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. In two separate counts, the grand jury

also charged Johnson with distributing crack cocaine on November 8, 2007, and December 14, 2007, in violation of 21 U.S.C. § 841(a)(1).

Thereafter, on September 22, 2008, the district court entered a standing discovery order, in which it provided that, within 14 days of the order, the government was required to disclose the existence of any payments or promises of immunity or lenience made to a government witness, as required by *Giglio*. In addition, the court ordered that the government should also disclose any prior convictions of any informant who would testify on the government's behalf at trial.

On November 26, 2008, the government sent a letter, *via* fax and email, to Lawson. In its letter, the government informed Lawson that it intended to present the testimony of a CI. The government further informed Lawson that, in compliance with its duty under *Giglio*, it was disclosing that this CI had worked as an informant in additional cases, and that the CI had been paid the following sums for his assistance: (1) $10,000 by the FBI; (2) $29,000 by the DEA; (3) $4,830 by the Lake Worth Police Department; and (4) $6,655 by the Boynton Beach Police Department. In Lawson's case, the CI had been paid $200 for each drug transaction in which he had participated during the investigation of Johnson and Lawson. The government averred that it did not make any promises of immunity, leniency, preferential treatment, or any other inducements, in exchange for the CI's

3

participation in the case. The government attached a copy of the CI's criminal history report.

On November 28, 2008, Lawson filed a motion *in limine* requesting that the court exclude the CI's testimony or, in the alternative, grant a 45-day continuance of the trial date. In support of his motion, Lawson pointed out that the government disclosed its *Giglio* information only two business days before his trial. He asserted that this did not provide him with enough time to investigate the information and effectively use it at trial. Specifically, he asserted that he needed additional time to investigate the details of the witness's previous offenses and past work as a CI. The district court summarily denied this motion.

Lawson's trial commenced on December 2, 2008. At trial, Carlos Reinhold, a police officer employed by the Boynton Beach Police Department, testified that on November 8, 2007, he directed a CI, Alonzo Martin, to contact Terry Johnson in order to set up a drug transaction. Johnson sold crack cocaine to Martin on November 8. On November 9, Martin again contacted Johnson to set up another drug transaction. Reinhold outfitted Martin with recording equipment so that there would be a videotape of his transaction with Johnson.

Reinhold further testified that, at approximately 1:00 p.m. on November 9, Martin arrived at a house to meet with Johnson. Reinhold observed Martin's

actions from another location approximately 300 feet away. Several minutes after Martin arrived at the meeting location, Reinhold observed Martin and Johnson walk around the corner of the house and outside of his view. About five minutes later, Reinhold observed Lawson drive down the street in a convertible with the top down. The next time Reinhold saw Lawson, Lawson was standing in front of the house where Martin and Johnson had met. He observed that Lawson walked around the same corner of the house that Martin and Johnson had walked around. As a result, Lawson was outside of Reinhold's sight for several moments. Thereafter, Martin left the house, and he and Reinhold met at a different location. At this point, Martin turned over three bags of crack cocaine to Reinhold.

Johnson testified that he and Lawson had been involved in drug trafficking together for approximately two years. Johnson bought crack cocaine from Lawson about three to five times each week. The crack cocaine that he sold to Martin on November 9 had been supplied to him (Johnson) by Lawson.

During Johnson's testimony, the government played a videotape of the drug transaction that occurred on November 9, and Johnson explained what was occurring on the videotape. Specifically, he explained that the video depicted himself and Martin waiting on a crack cocaine delivery. Eventually, Lawson walked up to the house where Martin and Johnson were standing and gave Johnson

crack cocaine. Johnson then sold the crack cocaine to Martin.

On cross-examination, Johnson testified that Lawson lived in the Cherry Hill neighborhood, which was where Johnson had conducted his drug deals with Martin. Many people walked around and visited with each other in this neighborhood. Johnson and Lawson knew each other from seeing each other in Cherry Hill.

After Johnson concluded his testimony, the government announced that it intended to call Martin as a witness. Lawson objected, referencing his earlier motion *in limine*. The court ruled that it would not exclude Martin's testimony, reasoning that Martin played a key role in the case. The court also found that, while it was important for the jury to know that Martin made his living by acting as a CI, it was not appropriate for the jury to know additional details regarding Martin's assistance in other cases. Regarding Martin's previous convictions, the court determined that, under Fed.R.Evid. 609, Martin should be impeached only with the conviction that occurred within the last ten years, and that the jury should hear only basic information about the conviction, such as the offense name and the date of conviction. The court emphasized that it would permit defense counsel to cross-examine Martin regarding his compensation from the government.

Martin subsequently testified that in late 1999, he was arrested for

possession with intent to distribute crack cocaine, and pled guilty to the offense. After he was released from prison in 2002, he began working as a plumber. In 2006, an employer fired him because the company discovered that he had concealed his criminal history on his employment application. Thereafter, he began working full-time as a CI for both state and federal agencies, and this was how he presently made his living. From early 2007 until the time of the trial, he had earned about $50,000 as a CI. In the present case, he earned $200 for each of his three drug transactions with Johnson.

Martin further testified that, on November 9, 2007, he called Johnson to arrange a drug transaction. Martin met with Johnson at a house and, about ten minutes later, Lawson arrived. Like Johnson, Martin reviewed the videotape of the events on November 9. He explained that the videotape depicted him and Johnson waiting for a crack cocaine delivery. When Lawson arrived at the house, Lawson handed five or six packages of crack cocaine to Johnson. Thereafter, Martin purchased three of these packages from Johnson.

On cross-examination, Martin reiterated that he was convicted of possession with intent to distribute crack cocaine in 1999. He reviewed the fact that, in 2006, an employer fired him because he had omitted his criminal history from an employment application. In November 2007, he had been working as a CI for less

7

than one year. During his employment as a CI, the FBI had paid him $10,000, the DEA had paid him $29,000, the Lake Worth Police Department had paid him $4,830.00, and the Boynton Beach Police Department had paid him $6,655.00. He admitted that drugs were not visible in Lawson's hands on the video of the November 9 transaction. Martin did not observe any money being handed to Lawson.

The jury found Lawson guilty of distribution of crack cocaine. Lawson filed a post-trial motion for a judgment of acquittal under Fed.R.Crim.P. 29, or, in the alternative, a new trial under Fed.R.Crim.P. 33. Regarding his Rule 33 motion, Lawson argued that he was entitled to a new trial because he was prejudiced by the government's tardy disclosure of *Giglio* material only two business days before trial. He again asserted that this tardy disclosure violated the court's September 22 standing discovery order. In addition to reasserting his arguments that he needed more time to investigate Martin's criminal history and his past work as a CI, Lawson pointed out that he did not learn that Martin was terminated due to his omission of his criminal history on an employment application until Martin testified on direct examination. The district court denied the motion.

**III.**

We review *de novo* a district court's determination as to whether an error

occurred under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct.1194, 1196-97, 10 L.Ed.2d 215 (1963). *United States v. Mejia*, 82 F.3d 1032, 1036 (11th Cir. 1996). We review for abuse of discretion, however, a district court's ruling regarding the following motions: (1) a motion to continue a trial; (2) a motion to exclude evidence; and (3) a motion for a new trial. *United States v. Valladeres*, 544 F.3d 1257, 1261 (11th Cir. 2008) (motion for continuance); *United States v. Reyes Vasquez*, 905 F.2d 1497, 1499 (11th Cir. 1990) (motion to exclude evidence); *United States v. Spoerke*, 568 F.3d 1236, 1244 (11th Cir. 2009) (motion for a new trial).

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196-97. In order to establish a *Brady* claim, a defendant must show that:

(1) the government possessed evidence favorable to the defendant, including impeachment evidence;
(2) the defendant does not possess the evidence, nor could he obtain it himself with any reasonable diligence;
(3) the government suppressed the favorable evidence; and
(4) had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001) (quotation and

9

alteration omitted).

In *Giglio*, the Supreme Court applied *Brady* to hold that, where the credibility of a witness is at issue, the government is required to disclose evidence bearing on the witness's credibility. 405 U.S. at 154-55, 92 S.Ct. at 766. "Impeachment evidence should be disclosed in time to permit defense counsel to use it effectively in cross-examining the witness." *United States v. Jordan*, 316 F.3d 1215, 1253 (11th Cir. 2003). The delayed disclosure of *Brady* evidence compels reversal only when the defendant demonstrates prejudice. *United States v. Beale*, 921 F.2d 1412, 1426 (11th Cir. 1991). In the context of the government's failure to disclose impeachment evidence, a defendant is prejudiced where there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976).

In *United States v. Bueno-Sierra*, we considered the defendants' claim that

10

the government violated *Brady* and *Giglio* by failing to disclose a key government witness's prior inconsistent statements until the seventh day of trial. 99 F.3d 375, 379-80 (11th Cir. 1996). We held that, while the government's actions were improper, the defendants were not prejudiced by the error because the court recessed the trial for the remainder of the day, and the defendants were able to fully explore the prior inconsistent statements on cross-examination. *Id.* In *United States v. Montes-Cardenas*, we considered whether the trial court erred in denying the defendant's motion for a continuance, which was based on the government's failure to disclose an immunity agreement with a key witness, as well as the witness's criminal history, until the day the trial began. 746 F.2d 771, 781 (11th Cir. 1984). We held that the defendant was not prejudiced by this error because evidence of the witness's immunity agreement and criminal history was presented on direct examination and probed on cross-examination. *Id.* In both of these cases, our prejudice analysis focused on whether the evidence in the government's possession was disclosed in enough time to be probed by the defense at trial. *See, e.g.*, *Bueno-Sierra*, 99 F.3d at 379-80; *Montes-Cardenas*, 746 F.2d at 781; *Mejia*, 82 F.3d at 1036-37.

In addition, we have indicated that a jury need not hear extensive details regarding a CI's participation in other cases. *See* 82 F.3d at 1036-37 (11th Cir.

11

1996). In *Mejia*, the defendants argued that the government violated *Brady* by failing to disclose that the CI: (1) received more than $16,000 for his work in other cases; (2) had been permitted to take over $10,000 outside of the country without completing the required paperwork; and (3) had not been required to pay taxes on the money given to him for his cooperation in the case. *Id.* at 1036. We held that there was no reversible error, as the government had disclosed how much the CI earned during his assistance in investigating the defendant, and the additional information regarding the CI's payments in other cases was "cumulative." *Id.* at 1036-37. In addition, the information was presented to the jury during cross-examination. *Id.*

Under Fed.R.Evid. 609, a witness other than the defendant may be impeached with a prior conviction if the crime was punishable by more than one year of imprisonment. Fed.R.Evid. 609(a)(1). Evidence of convictions obtained more than 10 years ago, however, is not admissible unless the court determines that the probative value of the conviction substantially outweighs its prejudicial effect. Fed.R.Evid. 609(b).

Because a claim that the government violated *Giglio* is also a claim that the government violated a defendant's right to due process, and Lawson argues that the government violated his right to due process for the same reasons that it violated

*Giglio*, we simultaneously address Lawson's arguments regarding *Giglio* and his due process rights. Here, even assuming that the government violated *Giglio* by delaying its disclosure of impeachment evidence, the error does not warrant reversal because there is no reasonable probability that, had the information been disclosed in a timely manner, Lawson would have been acquitted. Evidence concerning Martin's criminal history and status as a full-time CI was explored on both direct and cross-examination. He testified regarding the amount of money he earned as a CI, as well as the amount of the payments he received for his participation in Lawson's case. The fact that Martin had been fired from a previous job for concealing his criminal history on a job application was discussed on both direct and cross-examination. While Lawson generally argues that he was prejudiced because the government's late disclosure prevented him from discovering additional details with which to impeach Martin's credibility, our prejudice analysis has never included the consideration of whether the defendant's investigation of the government's impeachment evidence could have led to the discovery of additional impeachment evidence not in the government's possession.

Moreover, even if Lawson had been able to conduct an investigation based on the government's *Giglio* disclosure, it is unclear how additional details regarding Martin's criminal history and work as a CI would have aided Lawson in

13

his defense. Under Fed.R.Evid. 609(b), only Martin's 1999 drug trafficking conviction was admissible for purposes of impeachment. In addition, any additional details regarding Martin's past work as a CI properly would have been excluded as cumulative and irrelevant. Furthermore, there is no indication that details regarding Martin's criminal history and work as a CI would have added anything to the attack made on his credibility.

For the foregoing reasons, Lawson was not prejudiced by the government's tardy disclosure of *Giglio* information, and this conduct also did not violate his right to due process. Accordingly, the district court did not abuse its discretion in denying Lawson's motions to continue his trial, exclude witness testimony, and hold a new trial on this basis.

## IV.

We review for abuse of discretion a district court's refusal to impose a sanction for a discovery violation. *United States v. Roe*, 670 F.2d 956, 966 (11th Cir. 1982).

The government's failure to comply with a standing discovery order does not constitute reversible error unless it resulted in substantial prejudice to the defendant. *United States v. Camargo-Rivera*, 57 F.3d 993, 998 (11th Cir. 1995). "Substantial prejudice exists when a defendant is unduly surprised and lacks an

14

adequate opportunity to prepare a defense, or if the mistake substantially influences the jury." *Id.* at 998-99. We have held that a defendant was substantially prejudiced where the previously undisclosed testimony of a government witnesses eradicated the defendant's theory of the case. *Id.* at 998-99. Generally, a defendant is not prejudiced by a discovery violation where there is substantial evidence that otherwise implicates them in the offense. *See Bueno-Sierra*, 99 F.3d at 378, 380.

Here, Lawson was not prejudiced by the government's failure to comply with the court's September 22 standing discovery order. Even if Lawson had been able to use the government's *Giglio* disclosure to discover additional impeachment evidence against Martin, there was still substantial evidence that corroborated Martin's testimony and was probative of Lawson's guilt. Johnson testified consistently with Martin that Lawson met with them at a house on November 9 and gave crack cocaine to Johnson. In addition, he testified that he regularly bought crack cocaine from Lawson. While drugs were not visible in Lawson's hands on the government's videotape, both Johnson and Martin testified that this tape depicted Lawson meeting with them to deliver drugs. Finally, while Reinhold did not witness the November 9 drug transaction, he testified that he saw Lawson at the house where Johnson and Martin met to complete their drug transaction. In

15

light of this inculpatory evidence, as well as the fact that Martin's testimony was corroborated by Johnson, the government's discovery violation did not prejudice Lawson. Moreover, there is no indication that the government's untimely disclosure resulted in the eradication of Lawson's "mere presence" defense. Because Lawson was not prejudiced by the government's discovery violation, the district court did not abuse its discretion in denying his motions to exclude testimony, continue his trial, and to hold a new trial on this basis.

Finally, Lawson's argument that the district court abused its discretion by failing to adequately consider whether the government's conduct warranted the exclusion of Martin's testimony or a continuance of the trial also lacks merit. At trial, the court listened to the parties' arguments regarding this issue, and provided numerous reasons supporting its decision to deny Lawson's motion to exclude the testimony or continue the trial. Because the court provided adequate reasoning for its decision to deny Lawson's requests, his argument that the court abused its discretion in this regard lacks merit.

**AFFIRMED.**