UNITED STATES of America,
Plaintiff–Appellee,

v.

Irvin Alamia MORAN (91–6309) and Rena
Morales (91–6310), Defendants–
Appellants.

Nos. 91–6309, 6310.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 17, 1992.

Decided July 16, 1993.

Rehearing and Suggestion for Rehearing
En Banc Denied Sept. 2, 1993.

Cynthia J. Collins, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Memphis, TN, for plaintiff-appellee.

William Craig Hall (argued and briefed), Memphis, TN, for defendants-appellants.

Before: KENNEDY, MARTIN, and JONES, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Irvin Alamia Moran and Rena Morales appeal their convictions for possession of marijuana with intent to distribute. Both defendants challenge the district court's denial of their motions to suppress evidence and of their motions to dismiss the indictment under the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.* Morales also contends that sufficient evidence does not exist to sustain his conviction. We vacate the judgment of the district court and remand the case for dismissal of the indictments with directions to determine whether the indictments should be dismissed with or without prejudice.

On November 27, 1989, David J. Ducrest, Sheriff's Deputy in Shelby County, Tennessee, was operating a stationary radar device to monitor eastbound traffic on Interstate 40 near Airline Road. According to the radar, Moran drove by Ducrest in a Nissan truck with tinted windows at a speed of sixty-three miles per hour in a fifty-five miles-per-hour zone. Ducrest contacted Officer Lanny Hughes by radio in a patrol car and asked him to stop the truck for speeding.

When Moran noticed Hughes, Moran pulled over and got out of the truck to talk to the officer. Hughes noticed that the pickup had struck the guard rail when Moran pulled off the road but that Moran showed no concern regarding possible damage to the truck. The officer then asked Moran for evidence of the truck registration. Moran opened a door and asked the passenger, Rena Morales, to give him the registration documents. When the door was open, Hughes smelled a strong odor that he identified as marijuana.

At this point, Hughes called Officer Ducrest to the scene and told him about the odor of marijuana. Officer Ducrest requested permission to search the truck, and Moran consented. Meanwhile, Moran got into Hughes' patrol car. When Officer Ducrest got to the truck, he noticed the heavy scent of air freshener that seemed to have been sprayed immediately before this point. The only person who could have applied the spray was Morales, who remained in the passenger seat throughout the incident. Despite the air freshener, Ducrest detected the odor of raw marijuana. When the truck was searched, law enforcement officials found several duffel bags containing a total of 150 pounds of marijuana. The bags were located in the area behind the passenger seats. Moran and Morales were then read their Miranda rights and placed under arrest.

On November 27, 1989, a criminal complaint was filed against Morales and Moran. A federal grand jury returned a one-count indictment against both defendants on December 11. The indictment charged them with aiding and abetting each other in the possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). On January 10, 1990, Moran and Morales were arraigned, and the trial was subsequently set for February 20. The court later granted a continuance to allow the defendants to file suppression motions and to avoid scheduling conflicts for Moran's counsel. On January 24, Moran filed a motion to suppress evidence found in the vehicle. Morales filed a motion to suppress the same evidence on February 5. The district court conducted an evidentiary hearing on January 24, 1991, and denied both motions on April 11. By May 1, 1991, both Moran and Morales filed motions to dismiss the indictments for violation of the Speedy Trial Act. These motions were denied on May 28. A jury convicted both defendants on July 31, 1991. After being sentenced on September 27, both defendants filed timely appeals.

The Speedy Trial Act sets time limits on the prosecution for bringing a case to trial after arraignment or indictment. 18 U.S.C.

§ 3161, *et seq.* The purpose of the statute is "to quantify and make effective the Sixth Amendment right to a speedy trial." *Henderson v. United States,* 476 U.S. 321, 333, 106 S.Ct. 1871, 1878, 90 L.Ed.2d 299 (1986) (White, J., dissenting). The Speedy Trial Act provides that:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offenses shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs....

18 U.S.C. § 3161(c)(1).

■ The statute permits certain "periods of delay [to be] excluded ... in computing the time within which the trial ... must commence." 18 U.S.C. § 3161(h). One circumstance in which the seventy-day period is tolled is the duration of any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion...." 18 U.S.C. § 3161(h)(1)(F). Another excludable time is a "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." 18 U.S.C. § 3161(h)(1)(J). If the trial does not begin within seventy days or an additional amount of time allowed under the exclusions provided by section 3161(h), the indictment or information must be dismissed on motion of the defendant, with or without prejudice. 18 U.S.C. § 3162(a)(2). The district court determines whether the indictment should be dismissed with or without prejudice because it is in the best position to evaluate whether reprosecution would properly serve the ends of justice. *United States v. Richmond,* 735 F.2d 208, 217 (6th Cir.1984).

■ In the present case, the seventy-day period began to run from the date of indictment. *See United States v. Mentz,* 840 F.2d 315, 325 (6th Cir.1988) (holding that the seventy-day time period begins to run at the date of indictment when the defendant is

arrested prior to indictment). The day of arraignment is excluded from the seventy-day period. *Id.* at 326. Consequently, the United States was required to bring Moran and Morales to trial within seventy days of December 11, 1989, barring the arraignment date and any other excludable delays.

Two particular periods of delay excluded by the district court are at issue. Moran and Morales challenge the exclusion of time allowed for filing pretrial motions and part of the time between the suppression hearing and the date the district court issued its ruling on the motions to suppress. On January 10, the district court announced that it would give the parties fifteen days to file pretrial motions. It is undisputed that under 18 U.S.C. § 3161(h)(1)(F), the speedy-trial clock stopped running when Moran filed a motion to suppress on January 24, 1990. Moran and Morales contend that the district court erred when it excluded not only the time after the motion was filed but also all prior time specifically allowed by the district court for the preparation of such motions. Therefore, the issue is whether the period allowed by the district court for preparation of pretrial motions is excludable. This question has not yet been answered in this circuit.

In the district court order denying the defendants' motions to dismiss the indictment, the district court noted the Seventh Circuit's conclusion in *United States v. Barnes,* 909 F.2d 1059, 1064–65 (7th Cir. 1990) that the time given for the filing of motions is excludable. The *Barnes* decision was based on the holding in *United States v. Montoya,* 827 F.2d 143, 152–53 (7th Cir. 1987). In *Montoya,* the Seventh Circuit held that the time period set by the district court for filing motions stops the speedy-trial clock until the motions deadline unless the defendant informs the court that it has allocated too much time to potential motions and that the case should proceed without concern for any possible pretrial motions.

■ We disagree with the Seventh Circuit's conclusion. The statute expressly excludes only the period "from the filing of the [pretrial] motion through the conclusion of the hearing on, or other prompt disposition

of, such motion." 18 U.S.C. § 3161(h)(1)(F). The statute does not provide that a period allowed by the district court for preparation of pretrial motions is to be excluded from the seventy-day computations. Moreover, the burden should not be on the defendant to take affirmative steps to keep the speedy-trial clock running. Therefore, we determine that forty-two non-excludable days elapsed between December 11, 1989 and January 24, 1990. This calculation leaves a twenty-eight-day period in which the defendants had to be tried.

■ The other speedy-trial question is how many of the seventy-one days taken by the district court to rule on the motions to suppress are not excludable. Section 3161(h)(1)(F) excludes the time from the filing of a pretrial motion to the disposition of the motion. This period of tolling the speedy-trial clock includes time after a hearing on a motion when the district court is waiting for supplemental filings from the parties that are necessary for disposition of the motion. *Henderson v. United States,* 476 U.S. 321, 330–31, 106 S.Ct. 1871, 1876–77, 90 L.Ed.2d 299 (1986). Moran and Morales claim that 18 U.S.C. § 3161(h)(1)(J) does not exclude delays beyond thirty days after the disposition of pretrial motions. Section 3161(h)(1)(J) excludes from the seventy-day computation any "delay reasonably attributable to any period, *not to exceed thirty days,* during which any proceeding concerning the defendant is actually under advisement by the court" (emphasis added). "A motion is 'actually under advisement' when 'the court receives all the papers it reasonably expects....'" *Mentz,* 840 F.2d at 327 (*quoting Henderson,* 476 U.S. at 329, 106 S.Ct. at 1876)).

■ In this case, the United States filed the final post-hearing memorandum on January 30, 1991. Moran and Morales correctly contend that the clock began to run again on March 1, 1991 because at that point, thirty days had passed since the United States filed

its post-hearing memorandum. The thirty-day benchmark in section 3161(h)(1)(J) requires prompt disposition of the motion after the hearing is held and the district court has received all supplemental filings to avoid restarting the speedy-trial clock. *Mentz,* 840 F.2d at 326.

■ The United States argues that the tolling of the speedy-trial computation continued until April 11 because the statute does not explicitly apply the thirty-day limit to consideration of pretrial motions. The United States contends that we should adopt the Seventh Circuit's rule on the question. In *United States v. Tibboel,* 753 F.2d 608, 612 (7th Cir.1985), the court held that the maximum number of excludable days is not thirty days in a case with numerous pretrial motions but is whatever number of days is necessary to make a reasonably prompt decision. However, *Tibboel* merely created an exception that extends the time limit beyond thirty days in cases with multiple motions that require additional time for consideration. In the present case, only two motions, pertaining to suppression of the same evidence, are at issue. We do not believe that the district court needed more than thirty days to deliberate. Moreover, the United States asks us to invoke the *Tibboel* exception because of the number of pleadings involved in the instant case, rather than the number of motions as in *Tibboel.* Even though the district court had eighteen pleadings to address, each of these items basically involved the same issue: suppression of the evidence acquired at the time of arrest. Under these circumstances, we do not believe that the district court needed additional time to research the issues. Therefore, we decline to apply *Tibboel* to the case at hand.[1]

We also reject the district court's rationale for excluding the time after the thirty-day period from speedy-trial computations. The district court applied an "ends of justice" continuance under section 3161(h)(8). The statute provides for the exclusion of:

1. Such cases as *Tibboel* and *Montoya,* which create exceptions to the Speedy Trial Act, circumvent its purpose, which is to guarantee a speedy trial. *See Henderson,* 476 U.S. at 333, 106 S.Ct. at 1878 (White, J., dissenting) (noting

that the exclusions "are not to be used either to undermine the time limits established by the Act, or to subvert the very purpose the Act was designed to fulfill").

[a]ny period of delay resulting from a continuance granted by any judge on his own motion ... if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(8)(A).

■ The district court originally issued an ends of justice continuance on February 5, 1990 to allow "the *filing* of a motion to suppress and *continuity* of counsel" (emphasis added). Based upon its very terms, the continuance lasted only until the suppression motions were filed and counsel's scheduling difficulties were resolved. However, the district court later retroactively expanded the continuance to exclude all of the time through the date the court ruled on the motion. The district court reasoned that it did not need to issue a separate ends of justice continuance because the time between January 24 and April 11 had already been excluded by the earlier continuance. This type of post-hoc rationalization is not permitted. *See United States v. Crane*, 776 F.2d 600, 606 (6th Cir.1985) (" 'A district judge cannot wipe out violations of the Speedy Trial Act after they have occurred by making the findings that would have justified granting an excludable delay continuance before the delay occurred.' " (citation omitted)). Therefore, in accordance with 18 U.S.C. § 3161(h)(1)(J), we determine that forty-one non-excludable days elapsed while the district court was considering how to rule on the motions to suppress.

This holding does not conflict with our opinion in *United States v. Monroe*, 833 F.2d 95, 99 (6th Cir.1987), where we held that a delay may be excluded under section 3161(h)(8)(B), providing that the appropriate finding is made that a delay is in the interest of justice prior to the beginning of the period of delay. In the instant case, however, no such finding was made. As such, the delay was not excludable under the Speedy Trial Act.

■ After making all of the aforementioned adjustments, we find that there was a violation of the Speedy Trial Act. The forty-two days between the indictment date and

the date Moran filed a motion to suppress evidence are included in the seventy-day calculation. We also count the last forty-one days of the seventy-one days taken to rule on the motions to suppress. The total of eighty-three days exceeds the maximum allowable under the Speedy Trial Act. Therefore, we vacate the judgment and remand the case for entry of dismissal of the indictments. The district court will determine whether the indictments should be dismissed with or without prejudice. As a result of this decision, we need not decide Morales' argument regarding sufficiency of the evidence.

KENNEDY, Circuit Judge, dissenting.

As the majority points out, defendants contend two particular periods of delay violate the Act and thus justify dismissal of their indictments. First, the defendants challenge the exclusion from the seventy-day calculation of the time allowed by the District Court for filing of pretrial motions. Second, defendants challenge exclusion of the time following the suppression hearing before the district judge.

The issue with regard to the first contested time period is whether time expressly granted by a district court for preparing pretrial motions may be excluded from the seventy-day calculation, and on what basis under the Act. All parties agree that the clock ran from December 12, 1989, the day after defendants were indicted, until January 10, 1990, the date on which they were arraigned. At arraignment, the District Court allowed fifteen days for filing of motions, and Moran did, in fact, file a motion to suppress on January 24, 1990. All parties agree that the clock was tolled upon filing of this motion, under 18 U.S.C. § 3161(h)(1)(F).

In response to defendants' motions to dismiss for violation of the Act, the District Court relied on a line of Seventh Circuit cases to conclude that when a court announces a motions schedule, the time given for the filing of motions is excludable. Under *United States v. Montoya*, 827 F.2d 143, 152–53 (7th Cir.1987), absent a request by defendant that the clock keep running—in other words a request for immediate commencement of the case because less time

than allotted is sufficient for any prospective motions—the time period set by the District Court for filing motions tolls the Speedy Trial Act clock until the motions deadline. According to the *Montoya* Court, any period set aside for preparation of motions papers qualifies as an "other proceeding[ ] concerning the defendant" under 18 U.S.C. § 3161(h)(1), even if the time for filing motions is not requested by defendant and even if no motions are actually filed. Under the *Montoya* interpretation of the Act, the express exclusion of time related to the motion, delineated in 18 U.S.C. § 3161(h)(1)(F) as "from the filing of the motion through ... prompt disposition of[ ] such motion," is then read as additional to the implicit exclusion of the preparation time.[1] *See also United States v. Barnes*, 909 F.2d 1059, 1064–65 (7th Cir.1990); *United States v. Tibboel*, 753 F.2d 608, 610 (7th Cir.1985).

Such a reading of the Act is plausible under the language of the statute. Subsection (h)(1) states that excludable "delay resulting from other proceedings concerning the defendant" is "not limited to" the included list of excludable delays. Further, the legislative history supports such an interpretation. *See United States v. Jodoin*, 672 F.2d 232, 238 (1st Cir.1982). Statements can be found emphasizing the inexhaustive nature of the list and using the terms "proceedings" and "procedures" interchangeably. Since preparation of pretrial motions is much more easily referred to as a "procedure" concerning the defendant than as a "proceeding," such statements permit exclusion of a reasonable time expressly allowed by the District Court to prepare pretrial motions. Therefore, I would adopt the rule stated in *Montoya* and hold that the fifteen days specifically set for preparation of pretrial motions may be excluded from the seventy-day calculation under the Act.

The issue with regard to the second contested time period is what amounts of time after the suppression hearing and submission of the motions may be excluded from the seventy-day calculation. The District Court had the motions under advisement from February 5, 1991, when the District Court received Moran's request for specific findings,[2] to April 11, 1991, when it issued its order on the motions to suppress. Under section 3161(h)(1)(J), the first thirty days of this period are excludable. *See Tibboel*, 753 F.2d at 611; *United States v. Janik*, 723 F.2d 537, 543–44 (7th Cir.1983) (recognizing that pretrial motion is a matter under advisement with the court and thus section 3161(h)(1)(J)'s thirty-day allowance applies). This still leaves at issue, however, the excludability of the remaining time between the completion of the hearing and the ruling on the motions to suppress.

The government argues that we should adopt the Seventh Circuit's rule that the section 3161(h)(1)(J) thirty-day limit does not apply where multiple pretrial motions have been filed with a district court and that instead section 3161(h)(1)(F)'s "promptness" requirement is the only limit on the time taken by a district court to decide multiple pretrial motions. *Tibboel*, 753 F.2d at 611–12. Adoption of such a rule, however, would not help decide the present case, and therefore we leave the decision of whether to adopt it for another panel—one which is faced with the situation of a district court deciding multiple motions. Here, the government asks us to invoke the *Tibboel* rule,

---

1. 18 U.S.C. § 3161(h) reads, in pertinent part:
     (h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
       (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
       . . . .
       (F) delay resulting from any pre-trial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion; ...

2. The evidentiary hearing on the motions was held January 24, 1991. However, in *Henderson v. United States*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986), the Supreme Court held that the time in which a court is waiting for submission of post-hearing briefs and memoranda should be excluded, because the court is not yet ready to resolve a motion until all requisite information has been provided. *Id.* at 330–31, 106 S.Ct. at 1876–77. Thus, the District Court did not actually have the motion under advisement until February 5, 1991.

because of the number of *pleadings,* not motions, faced by the District Court. While the District Court was indeed confronted with "eighteen (18) pleadings" with respect to the motions, each of these documents, as the majority points out, essentially involved the same issue: suppression of the evidence acquired through the stop of the pickup truck. The District Court was faced with one motion from each defendant, and these two motions focused on the same set of facts (the stop and search of the pickup truck) and law (Fourth Amendment search and seizure doctrine). In these circumstances, I would not apply *Tibboel*'s exception for multiple motions, the implicit rationale for which is the additional time needed to research and deliberate on a number and variety of issues.

When it ruled upon defendants' motions to dismiss the indictment, the District Court attempted to retroactively create an "ends of justice" exclusion under section 3161(h)(8) for the time it took beyond the thirty days permitted by section 3161(h)(1)(J), stating that the "complexity of the issues pending in the motions" justified the delay, since "complex issues deserve the court's considered judgment and arbitrary deadlines do not warrant a decision that is not given its deserved attention and study." As this Circuit has indicated, for "difficult motions which require more than thirty days for disposition, an 'ends of justice' continuance under section 3161(h)(8) may be available *after* appropriate findings." *United States v. Mentz,* 840 F.2d 315, 326 n. 22 (6th Cir.1988) (citing H.R.Rep. No. 1508, 93d Cong.2d Sess. 33, reprinted in 1974 Code Cong. & Admin.News 7401, 7426) (emphasis added). This Circuit has also indicated that a court need not place the reasons underlying an ends of justice continuance on the record at the time it grants the continuance, as long as it does actually consider those factors at the time it grants the continuance. *United States v. Crane,* 776 F.2d 600, 606 (6th Cir.1985); *United States v. Richmond,* 735 F.2d 208, 216 (6th Cir.1984). This Circuit has been equally clear, however, in its hostility to post-hoc rationalizations made at the time of a motion to dismiss for violation of the Act, quoting Judge Posner's cautionary words that:

If the judge gives no indication that a continuance was granted upon a balancing of the factors specified by the Speedy Trial Act until asked to dismiss the indictment for violation of the Act, the danger is great that every continuance will be converted retroactively into a continuance creating excludable time, which is clearly not the intent of the Act.

. . . .

A district judge cannot wipe out violations of the Speedy Trial Act after they have occurred by making the findings that would have justified granting an excludable delay continuance before the delay occurred.

*Crane,* 776 F.2d at 606 (quoting *United States v. Janik,* 723 F.2d at 544–45). In both *Crane* and *Richmond,* the Court rejected district court rationalizations of delay put forth in denying motions to dismiss. *Crane,* 776 F.2d at 606; *Richmond,* 735 F.2d at 216. Thus, we should be suspicious of the District Court's retroactive "ends of justice" exclusion of the time taken to rule on defendants' motions. I would not decide the issue here, however, since I believe that the period from the decision on the motions, April 11, 1991, to when all parties agree the clock was again stopped, April 21, 1991, was properly excludable. As a result, even if only thirty of the sixty-four days taken to rule on the motions to suppress were determined not to be excludable, the total of non-excludable days would not exceed the seventy allowed by the Act.

When denying the motion to dismiss, the Court gave as a reason for an ends of justice exclusion for the period from April 11, 1991 to April 21, 1991 the need of the parties for trial preparation after receiving the ruling on the motions to suppress. (Defendants filed a motion to dismiss on April 21, 1991, so the days subsequent to that date are excluded.) It stated that it set the trial date for May 6, 1991 to give the parties that needed time and that it would have been unreasonable to set the trial for the day after announcement of the ruling on the motions. The May 6, 1991 trial date was set by an order entered the day after the decisions on the motions were filed. This supports the Court's statement

as to the reason why it intended to exclude this time. It did not enter an order at the time because it felt its earlier February 5, 1990 order excluding time from the filing of the motions to suppress to the trial date was sufficient.[3]

When all of the above adjustments in the exclusion and inclusion of time from the seventy-day calculation under the Act are aggregated, I end up with the following results. The fifteen days granted the District Court for pretrial motions are properly excluded from the seventy days allowed under the Act, as are the twelve days between the end of the testimony in the suppression hearing and the District Court's receipt of the final papers necessary to take the issue under advisement. Also excluded are the ten days between April 11, 1991 and April 21, 1991 (when defendants filed motions to dismiss), and the thirty days for consideration of the motion. Included in the seventy-day calculation are the twenty-nine days between the indictment and arraignment. Even if I then include thirty-four of the sixty-four days taken by the District Court to rule on the motions to suppress, the total non-excludable delay would only amount to sixty-three days, and thus the seventy-day limit set by the Act was not violated.

Since the case may be tried again, I would also rule on the other issues raised on appeal. Both defendants challenge the District Court's denials of their motions to suppress evidence. Defendant Morales also challenges the sufficiency of the evidence to support a conviction. I would affirm the District Court's refusal to suppress evidence and also find the evidence of Morales' guilt sufficient to support his conviction.

While checking traffic speeds with stationary radar on November 27, 1989, Shelby County, Tennessee Sheriff's Deputy David Ducrest clocked a Nissan pickup truck at sixty-three miles per hour in a fifty-five mile per hour speed zone on Interstate 40. Ducrest pulled out to enter traffic in order to stop the pickup, but then saw that Officer Lanny Hughes was approaching and already in the flow of traffic. Ducrest radioed Hughes and requested that he stop the pickup. Hughes did so. In pulling over, the driver of the pickup, defendant Moran, struck the guardrail. He then quickly exited the truck and met Hughes at the rear of the vehicle. Hughes escorted him back to the driver's compartment and inspected his registration and driver's license. While at the truck waiting for the registration papers, Hughes detected a strong odor of marijuana. He then asked Moran to come with him to the patrol car, where Hughes radioed Ducrest. When Ducrest arrived, he approached the pickup and noticed a strong odor of marijuana. Ducrest also noted that the marijuana odor was partially camouflaged by a strong odor of cologne. It appeared to Hughes and Ducrest that someone had sprayed the interior of the pickup heavily with cologne during the time Hughes was with Moran at the patrol car. The only person who could have done so was the pickup's passenger, defendant Morales, who remained in the passenger seat during this period.

Receiving permission to do so from Moran, the two law enforcement officers searched the pickup and discovered several large duffel bags containing 150 pounds of marijuana in the cab, directly behind the passenger seat. The bags took up the entire space behind the seat and in fact extended above seat level.

The scope of our review of sufficiency of the evidence is narrow. Our inquiry is "whether after reviewing the evidence in the light most favorable to the prosecution, *any*

---

**3.** I do not, however, wish to indicate approval of the District Court's attempt to "grandfather" the time taken to rule on the motions to suppress under the previous ends of justice exclusion granted on February 5, 1990. The difficulty with this attempt at justifying exclusion of the delay is that a continuance excluding time must be based on the factors actually motivating the continuance. *Crane,* 776 F.2d at 606 (6th Cir.1985); *Richmond,* 735 F.2d at 216. The reasons given in the ends of justice continuance of February 5, 1990 were "allowing the *filing* of a motion to suppress and continuity of counsel." (emphasis added) The continuance based upon these factors extended only until the motions were filed and counsel's scheduling difficulties were resolved. A continuance cannot be retroactively expanded—over a year later—to include new factors when a district court finds itself with a need to exclude time in order not to violate the Act.

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Ellzey,* 874 F.2d 324, 328 (6th Cir.1989) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). A finding of guilt may rest entirely upon circumstantial evidence. *Ellzey,* 874 F.2d at 328.

I cannot say that no rational jury could find Morales guilty of possession of marijuana with intent to distribute or of aiding and abetting Moran in possession with intent to distribute. Hughes presented uncontested testimony that he detected an overwhelming odor of marijuana when he first approached the pickup. Upon returning a few moments later, someone had sprayed an excessive amount of cologne inside the truck, and a cologne container was found inside the passenger compartment. Morales was the only person with access to the truck during this period. A rational jury could conclude that Morales had in fact sprayed the truck in order to impede the officers' detection of the marijuana behind the very seat in which Morales sat. This active effort to impede discovery of the continuing crime, possession with intent to distribute, provides a sufficient basis for conviction on the single-count indictment for possession with intent to distribute and aiding and abetting.

Moran challenges the constitutionality of the original stop of the pickup. Moran contends that the marijuana found in the truck should not have been admitted as evidence, arguing that the traffic stop for speeding was pretextual in nature and thus violated his Fourth Amendment rights. Under similar circumstances, this Court has found that because a defendant was found to have violated the speed limit and because no showing was made of law enforcement officers using impermissible criteria to isolate a particular traffic offender, no constitutional violation had been shown. *United States v. Dunson,* 940 F.2d 989, 993–94 (6th Cir.1991).

In the present case, the defendant contested and lost the factual issue of whether the pickup truck was speeding. Although defendant Moran introduced some evidence of targeting of out-of-state vehicles for traffic stops by Hughes, no evidence was introduced in relation to Ducrest. As noted by the District Court, this absence proves fatal, for the District Court found as a factual matter that Ducrest made the radar reading and committed to the stop. The District Court further found that Ducrest had committed to making the stop, by preparing to pull out and chase the truck, before seeing that the pickup bore out-of-state license plates. We are presented with no evidence upon which we could hold these factual findings to be clearly erroneous. Under these facts, the stop was objectively reasonable and therefore constitutional. *See United States v. Crotinger,* 928 F.2d 203, 206 (6th Cir.1991).

Defendant Morales also challenges the District Court's admission of the marijuana found in the pickup. Morales effectively concedes that he has no standing to challenge the search of Moran's truck or of the packages within.[4] Morales instead challenges the stop of the vehicle. Under Morales' theory, passengers have standing to challenge a vehicle stop that detains them, and if the vehicle stop is unconstitutional, then all subsequent fruits of that stop—even items of evidence found through a valid, consensual search of the vehicle—are barred under *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

We need not decide the issue. Assuming Morales has standing to challenge the stop, we have held that the stop of the vehicle was an acceptable intrusion upon the interests of the occupants.

Thus, I would AFFIRM the convictions.

---

4. Moran consented to the search of the vehicle. This Court has been clear that when the driver and owner of a vehicle gives permission to search, that permission is effective as to any passenger of the vehicle as well. *United States v. French,* 974 F.2d 687 (6th Cir.1992). None of the discussion which follows concerning Morales' standing to challenge the validity of the

stop which led to the search should be read to conflict with the Supreme Court's holding in *Rakas v. Illinois,* 439 U.S. 128, 148–49, 99 S.Ct. 421, 432–33, 58 L.Ed.2d 387 (1978), that a *vehicle* passenger does not customarily have the requisite expectation of privacy to challenge a search of the vehicle.