# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1608

_____

United States of America,           *
                              *

         Appellee,          *
                             *   Appeal from the United States
     v.                     *   District Court for the
                             *   Eastern District of Missouri
Darrell Henry Williams,       *
                             *

        Appellant.       *

_____

Submitted: March 12, 2002

Filed: July 3, 2002

_____

Before McMILLIAN, HEANEY and MORRIS SHEPPARD ARNOLD,
    Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Darrell Henry Williams appeals from a judgment of the district court[1] entered upon a jury verdict finding him guilty of conspiracy to distribute cocaine and escape from custody. The district court sentenced him to 310 months imprisonment and five years of supervised release. On appeal, he raises six issues, all of which are subject to plain error review. We affirm.

_____

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

## BACKGROUND

On October 12, 1999, acting on a tip from a confidential informant and surveillance, St. Louis, Missouri, airport police officers and federal Drug Enforcement Authority agents stopped Williams, Derrick Howard, Alicia Howard, Brianne Carr, and Chastity Dorsey shortly after they arrived from a flight from Houston, Texas. The officers and agents found cocaine on the women and cash on the men.

After being arrested and charged with conspiracy to distribute cocaine, Williams and the others pled guilty. While Williams was in custody, he escaped, but was captured. Williams then withdrew his guilty plea to the conspiracy charge. A superseding indictment charged him with conspiracy to distribute cocaine and escape from custody.

In opening argument, Williams' counsel told the jury about the withdrawn guilty plea. Williams' co-defendants testified for the government pursuant to plea agreements. Derrick Howard testified that he and Williams had flown to Houston to buy cocaine and that the women traveled with them to carry the cocaine back to St. Louis. The women corroborated Howard's testimony.

Williams testified in his defense. Outside the presence of the jury, Williams said he understood that by testifying he had "open[ed] the door to all sorts of things." Before the jury, Williams admitted that he had convictions for assault, robbery, attempted escape, and possession of firearms. He also admitted that he had distributed heroin, cocaine, and marijuana at a correctional facility. Williams acknowledged that he had admitted guilt in letters he had written to Howard, but claimed that he had lied in the letters. According to Williams, he went to Houston with Howard to buy a car, not cocaine, and only learned that Howard had purchased cocaine when he brought it to the hotel. Williams explained that he pled guilty

-2-

because the assistant United States Attorney (AUSA) had promised that he would receive an 18-month sentence if he lied and admitted involvement in the conspiracy.

As to the escape, William claimed that he escaped from jail because he had had threats on his life. He asserted that the threats came after the government had breached the plea agreement by releasing his identity as a "snitch." Williams, however, admitted that he never told anyone, except for his mother, about the threats or asked for protection from the jail.

Among other things, the government impeached Williams' testimony with his proffer statement and a stipulation of facts in support of the guilty plea, which both detailed his participation in the conspiracy. The government, in rebuttal, presented the testimony of the attorney who had represented Williams during the plea negotiations and agreement. The attorney testified that to his knowledge the AUSA did not tell Williams to lie and did not, and could not, promise a particular sentence in exchange for the plea. On redirect, the attorney stated that after the plea sentencing had been delayed because the AUSA believed that Williams had not been entirely truthful in his proffer.

**DISCUSSION**

On appeal, Williams alleges errors relating to the joinder of the conspiracy and escape counts, admission of evidence, and the government's closing argument. However, he concedes that his allegations of error are subject to plain error review. To establish plain error, Williams has to show an obvious error that affected his substantial rights. United States v. Campa-Fabela, 210 F.3d 837, 840 (8th Cir. 2000), cert. denied, 532 U.S. 1010 (2001). Moreover, "we reverse for plain error only where the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

As to the joinder of the counts, there was no error, much less plain error. Contrary to Williams argument, the joinder did not prejudice his defense to the escape charge. Williams did not, and could not, show "a well-grounded fear of immediate death or serious injury and no opportunity to avoid the threatened harm other than the commission of the act, in this case, escape from custody." United States v. J.L.K., Jr., 880 F.2d 993, 995 (8th Cir. 1989) (per curiam). His failure to report the alleged threats to his life to anyone except his mother "refute[s] his theory of defense that he faced an actual and immediate threat to his life or safety and had no choice but to escape." Id.

Nor does Williams show prejudice as to the conspiracy charge. Williams admits that evidence of the fact of the escape would have been admissible to show consciousness of guilt in a separate trial on the conspiracy charge. However, he argues that he was prejudiced by the joinder because, in order to explain his motive for the escape, he had to open the door to evidence of his withdrawn guilty plea. Williams has mischaracterized his trial strategy. He did not introduce evidence of the guilty plea solely to offer a defense to his escape charge. Indeed, Williams' counsel did not even mention that reason in explaining to the district court why he was going to tell the jury about the withdrawn guilty plea. Counsel told the court he was doing so to cast doubt on Howard's credibility. Although, as Williams notes, Fed. R. Crim. P. 11(e)(6) and Fed. R. Evid. 410 provide that evidence of a withdrawn plea agreement and statements made during plea negotiations are generally inadmissible in a criminal proceeding against a defendant, a defendant may waive, as Williams did, the protection offered by the rules. See United States v. Swick, 262 F.3d 684, 686 (8th Cir. 2001) (citing United States v. Mezzanatto, 513 U.S. 196, 210 (1995)).

Likewise, there was no plain error in the government's cross-examination of Williams concerning his proffer statement and plea stipulation. The proffer statement expressly provided that, in the event that Williams testified at a trial and offered testimony different from his proffer statement, "the Government may cross-examine

him concerning any statements made or other information provided during the [proffer] interview." Appellant's Addendum at 9. See Swick, 262 F.3d at 686 (holding plea agreement waived plea statement rules); United States v. Young, 223 F.3d 905, 909-910 (8th Cir. 2000), cert. denied, 531 U.S. 1168 (2001) (same).

We also reject Williams' plain error arguments concerning admission of bad acts evidence under Fed. R. Evid. 404(b), the district court's instructions concerning such evidence, and the government's closing argument. As to the closing argument, we note that although there may have been no evidence that Williams and Howard had gotten the "girls hooked" on drugs, given the overwhelming evidence of guilt, Williams has failed to produce prejudice. Although Williams suggests substantial evidence did not support the verdict because his co-defendants' testimony was not credible, it was for the jury to assess it, not this court. We also reject Williams' argument that cumulative errors deprived him of a fair trial.

Accordingly, we affirm.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT

-5-