# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2357

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| Taylor Bloate, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 13, 2008
Filed: July 25, 2008

_____

Before RILEY, JOHN R. GIBSON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Taylor James Bloate was convicted of one count of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and one count of possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1). The district court[1] sentenced him to 360 months' imprisonment. Bloate appeals, asserting a Speedy Trial Act violation and other trial and sentencing errors. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

[1]The Honorable Stephen N. Limbaugh, Sr., United States District Judge for the Eastern District of Missouri.

I.

On August 2, 2006, officers saw three vehicles, including a Nissan, driving erratically. A few minutes later, they saw the Nissan parked in front of an apartment building, and began surveillance. Witnessing numerous people coming in and out of the building, they suspected drug activity. Eventually, two individuals left in the Nissan. When the driver committed several traffic violations, the officers tried to make a stop. The driver pulled to the side of the road several times, but then drove off as the officers approached. Finally, the driver stopped completely. As the officers approached, they saw two small bags of a white substance (later determined to be crack cocaine) on the driver's lap. The officers seized the cocaine and arrested the driver, identified as Bloate.

After *Miranda* warnings, Bloate repeatedly said, "I'm done, I'm done, I'm going to the penitentiary." He also stated that he did not initially stop because he was trying to find the crack cocaine. When asked about the apartment building, he said, "I don't live there, I don't got nothing to do with that place." The passenger was identified as Shanita Boclair, Bloate's girlfriend. She admitted living in the apartment building, consented to a search (both verbally and in writing), and provided officers with a key, which they used to enter the apartment. Boclair accompanied the officers during the search; no one else was in the apartment. Officers discovered a large closet with closed doors. Inside the closet, they found: (1) men's clothing; (2) a bulletproof vest; (3) three firearms (two loaded); (4) ammunition; (5) individually packaged crack cocaine (totaling about 13.47 grams); (6) paperwork with Bloate's name; (7) Bloate's identification card; and (8) marijuana (about 10.33 grams). In the same room, officers discovered a rental agreement for the apartment, dated July 5, 2006, and signed by Bloate and Boclair.

The officers took the firearms, ammunition, bulletproof vest, drugs, and paperwork to the police station where Bloate was. When the officers entered the room

with the items, Bloate said, "that's all mine, it's not hers, she's got nothing to do with my business." The officers again administered *Miranda* warnings. Bloate admitted living at the apartment and owning the items. During booking, officers seized $1,077 cash from Bloate's person.

The case then proceeded as follows:

- August 24: Bloate was indicted for being a felon in possession of a firearm, and possession with intent to distribute crack cocaine.
- September 7: Bloate moved to extend the deadline for pretrial motions, which was granted until September 25.
- September 25: Bloate waived his right to file pretrial motions.
- October 4: A magistrate judge conducted a hearing, finding Bloate's waiver voluntary and intelligent, and granted leave to waive his right to file pretrial motions.
- November 8: Bloate moved to continue the trial date. Also, Bloate, his counsel, the Assistant United States Attorney, and two police officers met. Bloate signed a proffer agreement, and then admitted possession of the crack cocaine and firearms, and provided his sources for the drugs and firearms.
- November 9: The district court granted the motion, rescheduling the trial for December 18.
- December 13: The district court scheduled a change-of-plea hearing for December 20.
- December 20: At the hearing, Bloate decided not to change his plea to guilty, and requested new counsel. The district court rescheduled the trial for February 26, 2007.
- January 3: The district court appointed new counsel for Bloate.
- February 1: Bloate moved for leave to file pretrial motions out-of-time, and also to suppress physical evidence and statements.
- February 14: A magistrate judge denied Bloate's motions, finding he had waived his right to file pretrial motions.

- February 19: Bloate moved to dismiss due to a Speedy Trial Act violation.
- February 21: The district court denied the Speedy Trial Act motion.
- February 23: The district court rescheduled the trial for March 5.
- March 5: The two-day trial began.

At trial, the government presented the testimony of the officers at the scene of the arrest and search, the firearms examiner who tested the firearms, the forensic chemist who tested the drugs, the fingerprint examiner who confirmed Bloate's previous convictions, and an expert on crack cocaine sales and distribution. In response, Bloate presented the testimony of his landlord, his son, and his son's girlfriend. The landlord testified that, on August 2, Bloate's lease was not final because there was still money due, but that Bloate had permission to store some items there. He also stated that the backdoor to the apartment building might have been open, allowing access to the apartment. Bloate's son, Cortez, testified that he was arrested about the same time, and that officers brought him to the scene of the search and placed him in a police car with his father. Cortez's girlfriend testified that the officers first searched the apartment she was in (immediately above Bloate's apartment), and that the back door to the apartment building was open. Before its rebuttal, the government requested admission of statements Bloate made during his November 8 proffer. Over objection, the court allowed the evidence. One officer, present at the proffer, testified as to Bloate's statements admitting possession and disclosing his sources. The district court denied Bloate's motion for judgment of acquittal. The jury found him guilty of both counts.

II.

A.

In the context of the Speedy Trial Act, this court reviews the district court's findings of fact for clear error and its legal conclusions de novo. ***United States v. Lucas***, 499 F.3d 769, 782 (8th Cir. 2007) (en banc). The Act requires that a defendant's trial begin within 70 days after the indictment or the defendant's initial

-4-

appearance, whichever is later, subject to certain exclusions. *See* **18 U.S.C. § 3161(c)(1), (h)**. If a defendant is not brought to trial within this time limit, upon motion of the defendant, the district court must dismiss the information or indictment. **18 U.S.C. § 3162(a)(2)**.

Bloate asserts that the district court erred in denying his motion to dismiss due to a Speedy Trial Act violation. The indictment was filed on August 24, so the Speedy Trial Act clock began August 25. *See* **18 U.S.C. § 3161(c)(1)**. Bloate argues that only one other day is excludable, September 7, thus making the 70th day November 3. The district court rejected this reasoning, finding that the time periods between September 7 and October 4, and November 9 and February 26, excludable.

It is uncontested that the time period from August 25 to September 6 is nonexcludable (13 days). The first issue is the period from September 7 – the date the district court extended the deadline for filing pretrial motions – to October 4 – the date Bloate formally waived his right to file pretrial motions, a total of 28 days.

The Speedy Trial Act excludes: "Any period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." **18 U.S.C. § 3161(h)(1)(F)**. Here, Bloate never filed a pretrial motion. He requested an extension of the deadline for filing pretrial motions, but at that deadline, instead of filing motions, he waived his right to do so. Thus, subsection (F) does not apply.

Even without applying subsection (F), six circuits hold that pretrial motion preparation time may be excluded, if the court specifically grants time for that purpose, because that time is "delay resulting from other proceedings concerning the defendant." *See **United States v. Mejia***, 82 F.3d 1032, 1035-36 (11th Cir. 1996); ***United States v. Lewis***, 980 F.2d 555, 564 (9th Cir. 1992); ***United States v. Mobile Materials, Inc.***, 871 F.2d 902, 913-14 (10th Cir. 1989); ***United States v. Wilson***, 835 F.2d 1440, 1444-45 (D.C. Cir. 1987); ***United States v. Tibboel***, 753 F.2d 608, 610 (7th Cir. 1985); ***United States v. Jodoin***, 672 F.2d 232, 238 (1st Cir. 1982). These circuits

reason "that the phrase 'including but not limited to' in § 3161(h)(1) indicates that the particular time periods listed in subsections A through J are an illustrative rather than an exhaustive enumeration of those delays resulting from 'other proceedings concerning the defendant.'" *Lewis*, 980 F.2d at 564, *citing Wilson*, 835 F.2d at 1444; *Tibboel*, 753 F.2d at 610; *Jodoin*, 672 F.2d at 238; *see also*, *Mobile Materials, Inc.*, 871 F.2d at 913. One court notes that this construction eliminates a trap for trial judges, where accommodation of a defendant's request for additional time to prepare pretrial motions could cause dismissal of the case under the Speedy Trial Act. *See Wilson*, 835 F.2d at 1444; *see also Mobile Materials, Inc.*, 871 F.2d at 913-14 ("The grant allows the district court to dispose of the difficult question of whether the defendant's interests are better served by an uninterrupted march to trial or by a pause in proceedings at the defendant's request for the preparation of pretrial motions.").

Two circuits decline to use § 3161(h)(1) to exclude time allowed for preparation of pretrial motions. *See United States v. Jarrell*, 147 F.3d 315, 317-18 (4th Cir. 1998); *United States v. Moran*, 998 F.2d 1368, 1370-71 (6th Cir. 1993). The Fourth Circuit reasons that "Congress' decision not to include pretrial motion preparation time within the scope of the delay excludable under § 3161(h)(1)(F) strongly indicates that it did not intend to exclude such time under § 3161(h)(1) at all." *Jarrell*, 147 F.3d at 317; *see also Moran*, 998 F.2d at 1370-71 ("The statute expressly excludes only the period 'from the filing of the [pretrial] motion through the conclusion of the hearing on, or other prompt disposition of, such motion.' The statute does not provide that a period allowed by the district court for preparation of pretrial motions is to be excluded from the seventy-day computations.") (internal citation omitted).

This court has acknowledged the circuit split, but not decided the issue. *See United States v. Suarez-Perez*, 484 F.3d 537, 539 n.2 (8th Cir. 2007). This court now joins the majority of circuits in holding that pretrial motion preparation time may be excluded under § 3161(h)(1), if the court specifically grants time for that purpose. Here, the district court expressly extended the deadline for filing pretrial motions, at Bloate's request. Therefore, the 28-day period between September 7 and October 4 is excludable. The fact that Bloate did not actually file any pretrial motions is irrelevant. *See Mejia*, 82 F.3d at 1036.

It is uncontested that the time period from October 5 to November 8, 35 days, is non-excludable, thus bringing the total to 48 non-excludable days. The next issue is the time period from November 9 – the date the district court granted Bloate's motion to continue the trial date – to December 18 – the scheduled trial date, a total of 40 days.

The Speedy Trial Act specifically excludes:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

**18 U.S.C. § 3161(h)(8)(A)**. Subsection (B) then provides factors to consider in determining whether to grant such a continuance. **18 U.S.C. § 3161(h)(8)(B)**. Although the Act explicitly requires that the judge make an ends-of-justice finding before granting a continuance, it is ambiguous when that finding must be set forth in the record. *See* **18 U.S.C. § 3161(h)(8)(A)**; *Zedner v. United States*, 547 U.S. 489, 506-07 (2006). "[A]t the very least the Act implies that those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2)." *Id.* at 507. "Contemporaneity is not required . . . and a subsequent articulation suffices." *United States v. Stackhouse*, 183 F.3d 900, 901 (8th Cir. 1999) (per curiam), *citing United States v. Clifford*, 664 F.3d 1090, 1095 (8th Cir. 1981) ("While a court generally should make the findings required by section 3161(h)(8)(A) at the time it grants the continuance, the Speedy Trial Act does not require the court to make a contemporaneous record.").

Bloate argues that this time period is non-excludable.  True, in granting the continuance on November 9, the district court did not set forth an ends-of-justice finding on the record.  However, in denying Bloate's Speedy Trial Act motion on February 21, the district court stated:

> The court did not specify the reasons for the granting of defendant's request for a continuance, but in effect, did so on the basis of the motion.  In the motion, defendant stated that 'Counsel needs additional time to investigate and prepare this matter for trial.  Counsel believes that granting this continuance would outweigh the interests of the public and defendant to a Speedy Trial.'  This should comport with the requirements of 18 U.S.C. § 3161(h)(8)(A).

This finding references one  subsection (B) factor: "Whether the failure to grant such a continuance . . . would deny counsel for the defendant . . . the reasonable time necessary for effective preparation . . . ."  **18 U.S.C. § 3161(h)(8)(B)(iv)**.  *See Lucas*, 499 F.3d at 782-83 (ends-of-justice finding was sufficient, even though it could have been more detailed, where it specifically referenced one of the factors under § 3161(h)(8)(B)); *United States v. Gamboa*, 439 F.3d 796, 803 (8th Cir. 2006) ("the district court's order provided reasons for the court's finding by following the language of the statute, thereby demonstrating that the district court was aware of what requirements had to be met before a continuance could be granted.") (internal quotation marks and citation omitted).  This explicit on-the-record finding is sufficient, even though not contemporaneous with the grant of the continuance.  *See Stackhouse*, 183 F.3d at 901-02 (excluding time under § 3161(h)(8)(A) where the district court granted a continuance on April 23, 1998, and articulated its reasons on July 14, 1998).  The 40-day period between November 9 and December 18 is excludable.

The next issue is the time period from December 20 – the date the district court continued the trial date for a second time – and February 23 – the date the district court continued the trial date for a third time, a total of 66 days.  Again, Bloate asserts that this period is non-excludable.  Again, the district court did not set forth an ends-

of-justice finding in the record on December 20. The court did include one in its February 21 order:

> On December 20, 2006 it was obvious to the court, although specific findings were not made, that defendant and his counsel, at that time, were not able to resolve their conflicts. Although the court was reluctant to appoint counsel for the defendant at that late date, it appeared unwise not to do so as defendant should have had at least one further opportunity to have counsel of his choice, even at the government's expense. It was therefore obvious to the court that a delay was required in order that the ends of justice could more properly be served in this continuance. To force the defendant to go to trial on a date when a plea was to be implemented, when the defendant elected not to implement the plea agreement and express severe dissatisfaction with his attorney would, in fact, create serious consequences for the defendant. Granting these continuances obviously outweighed the best interest of the public and the defendant to a Speedy Trial.

This finding incorporates one of the § 3161(h)(8)(B) factors: "Whether the failure to grant such a continuance . . . would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation . . . ." **18 U.S.C. § 3161(h)(8)(B)(iv)**. *See **Lucas***, 499 F.3d at 782-83. As above, this finding is sufficient, even though not contemporaneous. *See **Stackhouse***, 183 F.3d at 901-02. The 66-day period between December 20 and February 23 is excludable.

The final issue is the time period from February 23 – the date the district court continued the trial date for a third time – and March 5 – the date the trial commenced, a total of nine days (not counting February 23, which was excluded above). It is not necessary to decide whether this period is excludable. Even if it is not, only 58 days passed between Bloate's indictment and trial, fewer than the 70 allowed by the Speedy Trial Act.

The Speedy Trial Act was not violated. The district court did not err in denying the motion to dismiss.

B.

Bloate argues that the district court erred in refusing to hear his pretrial motions, thus violating due process. When determining if a constitutional right has been waived, this court reviews the district court's factual findings for clear error, and the ultimate determination of whether a waiver occurred de novo. *United States v. Caldwell*, 954 F.2d 496, 504 (8th Cir. 1992). The waiver of a constitutional right must be knowing and intelligent. *Little v. Lockhart*, 868 F.2d 989, 991 (8th Cir. 1989), *citing Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). "A waiver is knowing and intelligent if made 'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *United States v. Harper*, 466 F.3d 634, 643 (8th Cir. 2006), *quoting Moran v. Burbine*, 475 U.S. 412, 421 (1986).

Bloate maintains that his waiver was not knowing because he was not adequately informed of the consequences of a waiver. To the contrary, the transcript of the waiver hearing shows that the magistrate judge expressly explained the nature and consequences of a waiver in detail. The judge explained the nature of what Bloate was waiving by stating, "These types of motions often attack the actions of the police when they arrest somebody and whether they took the statements properly or took evidence or seized or searched or arrested people properly . . . ." The judge told Bloate that "once you waive these motions today you can't come back the a [sic] later time and file them . . . ." Bloate said he understood. Finally, the judge told Bloate that "what you're giving up by waiving these motions is the right to have a judge make a finding that what the police did at the inception of your case was unconstitutional." Bloate again said he understood.

Bloate knowingly and intelligently waived his right to file pretrial motions. The district court did not err in refusing to hear his pretrial motions. *See United States v. Garrido*, 995 F.2d 808, 814-15 (8th Cir. 1993) (finding voluntary and knowing

-10-

agreement to withdraw pretrial motions where the court explicitly stated that the defendant was withdrawing his motions with prejudice and made it clear that the defendant would not be able to raise the motions again).

Alternatively, Bloate asserts that even if he did waive his right to file pretrial motions, the district court should have allowed them out-of-time under Federal Rule of Criminal Procedure 12(e). Rule 12(c) allows the court to "set a deadline for the parties to make pretrial motions." **Fed. R. Crim. P. 12(c)**. Rule 12(e) provides that a "party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) . . . . For good cause, the court may grant relief from the waiver." **Fed. R. Crim P. 12(e)**. This court "will reverse a decision declining to consider an untimely pretrial motion only for an abuse of that discretion." *United States v. Salgado-Campos*, 442 F.3d 684, 686 (8th Cir. 2006).

In his motion for leave to file his untimely pretrial motions, Bloate stated "that his previous waiver of pretrial motions was not knowing or voluntary, rather, it was based on a misunderstanding between the Defendant and his previous attorney." As detailed above, Bloate's waiver was knowing and voluntary, due to the magistrate judge's explanation of the right and its consequences. Thus, Bloate offers no good cause justifying his delay. The district court did not abuse its discretion in denying his motion. *See id.* ("Because Salgado-Campos fails to show good cause justifying his delay, the district court was well within its discretion to deny his request for an extension of time in which to file pretrial motions.").

C.

Bloate asserts that the district court erred in admitting his statements during the November 8 proffer. The fourth paragraph of the proffer agreement, which he specifically initialed, states:

> [T]he government may use any statements made or other information provided by your client to rebut evidence or arguments materially different from any statements made or other information provided by

your client. This provision is necessary to assure that no court or jury is misled by receiving information materially different from that provided by your client.

Bloate argues that he merely contested reasonable doubt, and did not offer any evidence or arguments that were materially different from the information he provided during the proffer. Rejecting this argument and allowing the evidence, the district court stated:

> While counsel indicates the defense in this matter is going to be reasonable doubt, I think it's rather obvious that the defense is that the government, of course, has to prove its case beyond a reasonable doubt but that the defendant simply was not involved with this matter, so accordingly, I think evidence of the proffer is appropriate to rebut that material. I don't think it necessarily is required under the agreement that the proffer rebut the defendant's testimony but the general nature of all of the evidence presented by the defendant as a part of his case as well as the cross-examination of the government's witnesses.

Statements made by a defendant in the course of plea negotiations, which may include proffer sessions, are usually inadmissible at trial. **Fed. R. Evid. 410**. *See also United States v. Velez*, 354 F.3d 190, 194 (2d Cir. 2004) (applying plea negotiation rules to proffer sessions). However, a defendant may waive these protections, so long as there is no indication "that the agreement was entered into unknowingly or involuntarily." *United States v. Mezzanatto*, 513 U.S. 196, 210 (1995). Here, Bloate does not assert that his waiver was unknowing or involuntary, instead focusing on whether the terms of the agreement actually allowed admission of his statements. Although he claims he only contested reasonable doubt, the heart of the testimony of two of his three witnesses – the landlord and his son's girlfriend – was that the apartment was not his and access was open. This testimony attempts to prove that Bloate did not possess the items found within the apartment, which is materially different than what he admitted during the proffer session. During the proffer, he specifically admitted possessing the drugs and firearms in the apartment.

-12-

The district court did not err in admitting statements made by Bloate during the proffer session. *See **United States v. Williams***, 295 F.3d 817, 820 (8th Cir. 2002) (upholding admission of proffer statement where defendant offered different testimony at trial).

D.

Bloate appeals the district court's denial of his motion for judgment of acquittal, asserting that the evidence was insufficient. Under Rule 29(a), a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." **Fed. R. Crim. P. 29(a)**. This court "reviews the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government, resolving any conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." ***United States v. Urick***, 431 F.3d 300, 303 (8th Cir. 2005). A court should not weigh the evidence or assess the credibility of witnesses. ***United States v. Hernandez***, 301 F.3d 886, 889 (8th Cir. 2002). The standard is strict, and this court will "reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." ***United States v. Piwowar***, 492 F.3d 953, 955 (8th Cir. 2007) (internal citation and quotation marks omitted).

Bloate claims the government did not prove beyond a reasonable doubt his knowing possession of the firearms, a required element of § 922(g)(1), or his knowing possession of the cocaine, a required element of § 841(a)(1). *See **United States v. Claybourne***, 415 F.3d 790, 795 (8th Cir. 2005) (elements of being a felon in possession of a firearm); ***United States v. Cuevas-Arrendondo***, 469 F.3d 712, 715 (8th Cir. 2006) (elements of possession of cocaine with intent to distribute). "Knowing possession can be actual or constructive, as well as sole or joint." ***Piwowar***, 492 F.3d at 955. "Constructive possession is proven by showing that a defendant 'had ownership, dominion, or control over the contraband itself, or dominion over the premises in which the contraband is concealed.'" ***United States v. Cole***, 380 F.3d 422, 425 (8th Cir. 2004), *quoting **United States v. Schubel***, 912 F.2d 952, 955 (8th Cir. 1990).

Bloate stresses that a lot of people were around the apartment building, the back door was possibly open, and that he was not found inside. However, this argument relies on weighing the evidence, which this court does not do. Viewing the evidence most favorably to the government, there was sufficient evidence of Bloate's dominion over the bedroom where the firearms and cocaine were discovered. Inside the closet where the firearms were hidden, officers found paperwork with Bloate's name and Bloate's identification card. *See United States v. Johnson*, 474 F.3d 1044, 1049 (8th Cir. 2007) (evidence was sufficient to show knowing possession where defendant's identification card and cable bill were found in the same room as the firearm); *Claybourne*, 415 F.3d at 796 (evidence was sufficient to show knowing possession where defendant's identification cards, Social Security card, and telephone bill were discovered in the same bedroom as the firearms). Additionally, in the same room, officers recovered a rental agreement for that apartment, signed by Bloate. Finally, Bloate admitted possession of the firearms and cocaine. This evidence was sufficient for the jury to find him guilty beyond a reasonable doubt.

The district court did not err in denying Bloate's motion for judgment of acquittal.

E.

Bloate appeals his sentence, contending that the district court violated his Sixth Amendment right to trial by jury by enhancing his sentence based on his prior convictions. This argument is foreclosed by precedent. *See*, *e.g.*, *United States v. Booker*, 543 U.S. 220, 244 (2005); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Almendarez-Torres v. United States*, 523 U.S. 224, 235, 240-44 (1998); *United States v. Levering*, 431 F.3d 289, 295 (8th Cir. 2005); *United States v. Carrillo-Beltran*, 424 F.3d 845, 847-48 (8th Cir. 2005); *United States v. Wilson*, 406 F.3d 1074, 1075 (8th Cir. 2005). No Sixth Amendment violation occurred.

## III.

The judgment of the district court is affirmed.

_____